UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHANEL MOODY, AYANDA CARMICHAEL,
AND RONNIE CLARK,

                                        Civil Case No.: 1:21-cv-6238

                    Plaintiffs,          **COMPLAINT AND DEMAND
                                          FOR JURY TRIAL**

        -against-


THE RELATED COMPANIES, L.P., AND
ERY SOUTH RESIDENTIAL TOWER LLC,

                    Defendants.
------------------------------------------------------------------X

*"And over at 15 Hudson Yards, a residential building, there are separate entrances for wealthy condo owners and the subsidized renters."[1]*

*"Buildings that segregate entrances for lower-income and middle-class tenants are an affront to our values," said Manhattan Borough President Gale Brewer.*

*"No landlord should be allowed to tell a child that they are not able to walk through the same doors, or play in the same areas, as their neighbor," said Assemblywoman Linda B. Rosenthal.*

*"This is a blast from an unpleasant past," Jonetta Rose Barras wrote in The Post. "... Growing up I experienced separate water fountains, separate bathrooms and separate entrances to restaurants and hotels, among other things. That was a signature of racial discrimination."*

Plaintiffs, CHANEL MOODY, AYANDA CARMICHAEL and RONNIE CLARK, by

and through their attorneys, MARK DAVID SHIRIAN, P.C., complaining of the Defendants,

THE RELATED COMPANIES, L.P., and ERY SOUTH RESIDENTIAL TOWER LLC,

(collectively "Defendants"), respectfully allege as follows:

---

[1]Paybarah, Azi. "Hudson Yards: The Making of a $25 Billion Neighborhood." New York Times, March 18, 2019. https://www.nytimes.com/2019/03/18/nyregion/newyorktoday/nyc-news-hudson-yards.html

## PRELIMINARY STATEMENT

1.   This action is brought by Plaintiffs, CHANEL MOODY, AYANDA CARMICHAEL and RONNIE CLARK (hereinafter "Plaintiffs"), to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, specifically intentional racial discrimination, disparate treatment, and disparate impact brought under 42 U.S.C. 3604, et seq., and 42 U.S.C. 3605, et seq., of the Fair Housing Act ("FHA"), which is accompanied by Title 8, chapter 1, of the Administrative Code of the City of New York, N.Y.C. Admin. Code 8-107 *et seq*., as amended, specifically Code 8-107(5), (hereafter the "NYCHRL" or the "City Law"), and Section 296(5) of the New York State Human Rights Law, (hereafter "NYSHRL" or the "State Law"),  against the Defendants, THE RELATED COMPANIES, L.P. (hereafter "Related") and ERY SOUTH RESIDENTIAL TOWER LLC (hereafter "ERY South"), for their outrageous and unlawful discriminatory acts against Plaintiffs, CHANEL MOODY, AYANDA CARMICHAEL and RONNIE CLARK, during their prospective tenancy with the Defendants.

2.   "In or around January 1961, Charlayne Hunter-Gault and Hamilton Holmes, following a court order, became the first African Americans admitted to the historically segregated University of Georgia in Athens, where the two transfer students — Ms. Hunter-Gault seeking a journalism degree, Mr. Holmes a pre-med — were almost universally unwelcome. *Isolated on the ground story of a girls' dorm, Ms. Hunter-Gault endured bullying from her upstairs neighbors, who banged on the floor above her room to annoy her*."[2]

3.   Unfortunately, sixty years since the University of Georgia finally admitted African American students for the first time, real estate developers have still found ways to unlawfully

---

[2] https://vineyardgazette.com/news/2021/02/25/her-own-history-spotlight-charlayne-hunter-gault-reflects

segregate low-income tenants from market-rate tenants in order to maximize their profits under New York's 421-a program.

4.   Section 421-a of the New York State Real Property Tax Law, ("Section 421-a of the New York State Real Property Tax Law") (hereafter "421-a") entitled "Affordable New York Housing Program," is a real estate tax exemption program for owners of certain newly-constructed [*4]  multiple dwellings. *Matter of Kew Gardens Dev Corp v Wambua* (103 AD3d 576, 961 NYS2d 48 [1st Dep't 2013]); *Lincoln Metrocenter Partners, LP v Tax Comm'n* (654 NYS2d 964, 171 Misc 2d 520 [Sup Ct NY Co 1996]). The 421-a tax program was established in 1971, engineered to incentivize the development of real estate in underutilized areas by significantly reducing property taxes for a certain amount of time.

5.   For buildings participating in the 421-a tax exemption program, rents are "fully subject to control" under Rent Stabilization and/or the Emergency Tenant Protection Act of 1974. NYS RPTL § 421-a(2)(f). See *Matter of Tribeca Equity Partners, LP v New York State Div of Hous & Community Renewal* (144 AD3d 554, 42 NYS3d 102 [1st Dep't 2016]); and see generally *Roberts v Tishman Speyer Props, LP* (62 AD3d 71, 874 NYS2d 97 [1st Dep't], aff'd by and certified question answered by 13 NY3d 270, 918 NE2d 900, 890 NYS2d 388 [2009]). Rent Stabilization status attaches to the apartments even if the building would otherwise be exempt from rent regulation. *North-Driggs Holdings, LLC v Burstiner* (44 Misc 3d 318, 325, 986 NYS2d 318 [Civ Ct Kings Co 2014]). *Siu Yat Chau v. Marquez*, 2018 NY Slip Op 50276(U), ¶ 2, 58 Misc. 3d 1226(A), 97 N.Y.S.3d 57 (Civ. Ct.).

6.   The 421-a tax abatement was extended to developers who agreed to provide affordable housing among luxury high-end apartments.

7.   Many developers managed to benefit from the millions of dollars in tax breaks along with added construction privileges. However, to maximize profits and marketability, developers vowed to segregate affordable units from their luxury ones.

8.   The term "poor door" is attributed to separate building entrances and, in reality, income-segregated properties often have separate amenities, as well, which can only be accessed by apartment owners or tenants with a higher income. [3]

9.   In or around 2015, New York City Mayor De Blasio attempted to take action and added language to the legislative loophole of §421-a, which was signed by Governor Andrew Cuomo, to supposedly outlaw "poor doors," and likewise, "poor buildings," stating that affordable units "must share the same common entrances and common areas as the market-rate units":

> (ii) affordable units shall share the same common entrances and common areas as market rate units, and **shall not be isolated to a specific floor or area of a building**. Common entrances shall mean any area regularly used by any resident for ingress and egress from a multiple dwelling.

*See* N.Y. Real Prop. Tax Law § 421-a (Consol., Lexis Advance through 2021 released Chapters 1-156)

10. Despite Mayor de Blasio banning "poor doors" in New York City, real estate developers have intentionally discriminated and segregated against low-income residents when it comes to affordable housing. Nevertheless, what began as a "poor door" has now evolved into the concept of a "poor building", with separate "poor addresses", and "poor floors."

11. If a developer fails to comply with the requirements of §421-a, it is not eligible to receive 421–a's tax incentives for providing mixed–income housing. 83. See N.Y. Real Prop. Tax

---

[3] See, e.g., Justin Wm. Moyer, NYC Bans 'Poor Doors' – Separate Entrances for Low-Income Tenants, WASH. POST (June 30, 2015) (describing the poor door controversy and the statutory changes that followed outrage over the practice's perceived unfairness and cruelty).

Law   421–a(7)(d)(ii) (McKinney 2015) ("[A]fford able units shall share the same common entrances and common areas as market rate units, and shall not be isolated to a specific floor or area of a building.").

12. Defendants own and operate 15 Hudson Yards., New York, New York, NY 10001 ("15 Hudson Yards") and is a property receiving the 421-a partial tax exemption. However, the affordable housing portion of the building is located at a separate address and isolated to specific lower floors located at 553 West 30th Street, New York, New York, NY 10001 ("553 West 30th"), separate from the market-rate units located within higher floors of 15 Hudson Yards.

13. 553 West 30th is an entirely separate building address on the same grounds as 15 Hudson Yards where low-income tenants are segregated and isolated to specific lower floors, separate amenities, and at one point, a separate entrance.

14. Regardless of whether the Defendants violated §421-a, the differences in wealth equate to the lower-income residents not having access to market-rate tenants and the posh amenities and rules and regulations of 15 Hudson Yards, which has become a modern day "New York-style financial apartheid."

15. Plaintiffs bring this action as prospective low-income tenants of 553 West 30th Street, based on their collective rejection of Defendants' offer of affordable units, in light of Defendants' discriminatory practices of instituting a "poor building address" and isolating low-income tenants to specific lower floors, separate from the market-rate tenants and units located on higher floors of 15 Hudson Yards, New York, New York 10001.

## JURISDICTION AND VENUE

16. This Court has original federal question jurisdiction under 28 U.S.C. 1331 and 1343 because this case is brought for housing discrimination under the Fair Housing Act. This Court has supplemental jurisdiction over Plaintiffs' NYSHRL and NYCHRL claims as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17. Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. 1391(b), because the claims arose in this judicial district and the Defendants are doing business in this District.

## PARTIES

18. Plaintiff, CHANEL MOODY, in an African American female and resides in New York County, City and State of New York.

19. Plaintiff, AYANDA CARMICHAEL, is a disabled African American female and resides in New York County, City and State of New York.

20. Plaintiff, RONNIE CLARK, is an African American male and resides in New York County, City and State of New York.

21. At all relevant times, Plaintiff, CHANEL MOODY, met the definition of a "prospective low-income tenant" under all applicable statutes.

22. At all relevant times, Plaintiff, AYANDA CARMICHAEL, met the definition of a "prospective low-income tenant" under all applicable statutes.

23. At all relevant times, Plaintiff, RONNIE CLARK, met the definition of a "prospective low-income tenant" under all applicable statutes.

24. At all relevant times, Defendants, THE RELATED COMPANIES, L.P. (hereinafter "RELATED"), was and still is a private-benefit authority, organized and existing under and by virtue of the laws of the State of New York.

25. At all relevant times, Defendants, ERY SOUTH RESIDENTIAL TOWER LLC (hereinafter "ERY SOUTH"), was and still is a foreign limited liability company, organized and existing under and by virtue of the laws of the State of New York.

26. Upon information and belief, Defendants, RELATED, was and is located at 60 Columbus Circle, New York, New York 10023, and is a real estate developer that owns the land upon which the dwelling at issue in this action are located.

27. Upon information and belief, Defendants, RELATED, is responsible for establishing and enforcing the rules of ownership, tenancy, and occupancy of the land upon which the dwelling at issue in this action are located.

28. At all relevant times, Defendants, RELATED, was and is a privately held New York City developer and landlord, founded by Stephen Ross in 1972. The company's flagship development in Manhattan was the Time Warner Center, a 2.8 million-square-foot residential and commercial complex at Columbus Circle.

29. At all relevant times, Defendants, RELATED, was and is a privately-owned real estate firm in New York City, with offices and major developments in Boston, Chicago, Los Angeles, Las Vegas, Miami, San Francisco, Abu Dhabi, London, São Paulo and Shanghai. Defendants

RELATED has more than 3,000 employees and is the largest landlord in New York City with over 8,000 residential rental units under ownership.

30. At all relevant times, Defendants, RELATED, has developed mixed-use projects such as Time Warner Center and the Bronx Terminal Market (both of which are located in New York City), as well as City Place in West Palm Beach.

31. At all relevant times, Defendants, RELATED and ERY South have developed a mixed-use project such as 553 West 30th Street, a/k/a 15 Hudson Yards, above a 26-acre rail yard off 10th Avenue, between 30th and 33rd Streets, owned by the Metropolitan Transportation Authority. The Hudson Yards Redevelopment Project comprises 28 acres (0.11 km2) in Manhattan's Chelsea and Hell's Kitchen neighborhoods.

32. At all relevant times, Plaintiff, CHANEL MOODY, was a prospective low-income tenant of 15 Hudson Yards' affordable housing unit located at 553 West 30th Street, New York, NY 10001.

33. At all relevant times, Plaintiff, AYANDA CARMICHAEL, was a prospective low-income tenant of 15 Hudson Yards' affordable housing unit located at 553 West 30th Street, New York, NY 10001.

34. At all relevant times, Plaintiff, RONNIE CLARK, was a prospective low-income tenant of 15 Hudson Yards' affordable housing unit located at 553 West 30th Street, New York, NY 10001.

35. At all relevant times herein, 553 West 30th Street has met the definition of a "building" under all applicable statutes.

36. At all relevant times, 553 West 30th Street has met the definition of a "building" under all applicable statutes.

37. Defendants RELATED and ERY SOUTH were prospective landlords of Plaintiff, CHANEL MOODY, at all relevant times to this action.

38. Defendants RELATED and ERY SOUTH were prospective landlords of Plaintiff, AYANDA CARMICHAEL, at all relevant times to this action.

39. Defendants RELATED and ERY SOUTH were prospective landlords of Plaintiff, RONNIE CLARK, at all relevant times to this action.

40. That at all times hereinafter mentioned, Defendant, THE RELATED COMPANIES, L.P., owned the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

41. That at all times hereinafter mentioned, Defendant THE RELATED COMPANIES, L.P., maintained the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

42. That at all times hereinafter mentioned, Defendant, THE RELATED COMPANIES, L.P., controlled the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

43. That at all times hereinafter mentioned, Defendant, THE RELATED COMPANIES, L.P., operated the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

44. That at all times hereinafter mentioned, Defendant, THE RELATED COMPANIES, L.P., was the lessee of the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

45. That at all times hereinafter mentioned, Defendant, THE RELATED COMPANIES, L.P., was the lessor of the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

46. That at all times hereinafter mentioned, Defendant, ERY SOUTH RESIDENTIAL TOWER LLC owned the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

47. That at all times hereinafter mentioned, Defendant ERY SOUTH RESIDENTIAL TOWER LLC maintained the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

48. That at all times hereinafter mentioned, Defendant, ERY SOUTH RESIDENTIAL TOWER LLC controlled the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

49. That at all times hereinafter mentioned, Defendant, ERY SOUTH RESIDENTIAL TOWER LLC operated the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

50. That at all times hereinafter mentioned, Defendant, ERY SOUTH RESIDENTIAL TOWER LLC was the lessee of the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

51. That at all times hereinafter mentioned, Defendant, ERY SOUTH RESIDENTIAL TOWER LLC was the lessor of the premises known as 15 Hudson Yards and 553 West 30th Street, New York, New York 10001.

## FACTUAL BACKGROUND

52. Upon information and belief, and at all relevant times herein, 553 West 30th (a/k/a 15 Hudson Yards) is a residential housing development that received and continues to receive the "Low Income Housing Tax Credit" under the 421-a partial tax exemption program.

53. Upon information and belief, and at all relevant times herein, 15 Hudson Yards is a property that received and continues to receive the 421-a partial tax exemption.

54. "When the state legislature approved a new version of the 421a tax abatement (now called "Affordable New York"), it eliminated the break for early all new condominiums. And although the break still applies to condo projects that secured 421a before it was eliminated for Manhattan condos, many projects are nearing the end of the abatement term, the Wall Street Journal reported. Those that still have it — like Related Companies' 15 Hudson Yards — are using it to attract buyers attracted to decades of absurdly low taxes." [4]

55. That at all relevant times herein mentioned, the Defendants, RELATED and ERY SOUTH, were the managing agent of 553 West 30th Street, the residential housing development in which the Plaintiffs were offered low-income units.

56. The allegations set forth below demonstrate that Defendants, RELATED and ERY SOUTH, intentionally sought and continue to seek to exclude minority tenants of 553 West 30th

---

[4] https://therealdeal.com/2018/04/26/almost-tax-free-manhattan-condos-are-dwindling/

by intentionally placing low-income tenants to subpar units that are isolated to lower floors within a separate building address, separate and apart from market-rate tenants and units within the higher floors of 15 Hudson Yards, and thus are intentionally discriminating against low-income tenants on the basis of race and color by violating the relevant portions of the Fair Housing Act and New York State and City Human Rights Laws.

57. In or around July 2019, Plaintiffs were selected from a housing lottery through "NYC Housing Connect" for low-income housing tenancy that Plaintiffs initially thought were located at "15 Hudson Yards" but in actuality were located at 553 West 30th.

58. Although Plaintiffs were interested in residing at 15 Hudson Yards as low-income tenants, they later became aware that the units offered by Defendants were located at 553 West 30th Street, New York, NY 10001, which sits on the same grounds as 15 Hudson Yards, but in an entirely separate part of the building and with a different address.

59. Sometime in 2019, Plaintiffs were approved to reside in low-income units at 553 West 30th.

60. In or around November 18, 2019, and November 25, 2019, Plaintiffs were interviewed for the low-income units at 553 West 30th Street.

61. However, in or around November 2019 when Plaintiffs interviewed and inquired into the units tat they were offered at 553 West 30th, Plaintiffs noticed that the building located at 553 West 30th Street was a separate building address from 15 Hudson Yards, specifically for the low-income units located on lower floors, that was adjacent to 15 Hudson Yards, the building with the market-rate units on higher floors.

62. At the time the low-income units became available in or around 2019, and at all relevant times herein, Defendants RELATED and ERY SOUTH, illegally segregated and discriminated against Plaintiffs and other prospective and current tenants of 553 West 30th Street by segregating the low-income units from market-rate units by placing low-income units on lower floors, and, at one point, excluding the low-income tenants from the same entrance and exit, amenities, rules and regulations, and limiting access to the overall building structure and address of 15 Hudson Yards, among other violations.

63. Specifically, Plaintiffs noticed that 15 Hudson Yards was a separate address with its own separate entrance that featured numerous amenities, including a fitness center, rooftop deck, screening room, pool, and a 24-hour doorman, which Plaintiffs would not have access to at 15 Hudson Yards as prospective low-income tenants of 553 West 30th Street.

64. In or around August 2019 and March 2020, Elvira Quintero Barroso of Related, interviewed Plaintiff Chanel Moody and informed her of the different rules and regulations and what was prohibited as a prospective tenant of 553 West 30th Street.  While at the interview, Plaintiff Moody asked Elvira Quintero Barroso whether she would be able to enter the 15 Hudson Yards entrance in order to access the 553 West 30th Street side of the premises. However, Elvira Quintero Barroso told Plaintiff Moody that she was prohibited from entering the 15 Hudson Yards entrance and from utilizing the pool and playroom located at 15 Hudson Yards.

65. Further, the low-income housing units of 553 West 30th Street, which Plaintiffs were approved for and would have rented if not for the aforementioned discriminatory practices, did not share the same playrooms or laundry rooms as the market-rate tenants of the adjacent building entrance at 15 Hudson Yards.

66. Upon information and belief, and at all relevant times herein, the low-income units within 553 West 30th were isolated and segregated to specific lower floors or areas, away and separate from the market-rate units at 15 Hudson Yards, which were located on higher floors with a separate "15 Hudson Yards" address.

67. Pursuant to the Regulatory Agreement between the New York State Housing Finance Agency and the Defendants, there are affordable rental units on the lower floors (with the address of 553 West 30th Street) and luxury condominiums on the upper floors (with the address of 15 Hudson Yards).

68. Further, 15 Hudson Yards has separate elevators from 553 West 30th Street and a 24-hour doorman. However, in comparison, the doorman assigned to 553 West 30th Street regularly leaves at 10 PM and the tenants of 553 West 30th Street have limited access to certain upper floors and are prohibited from entering certain upper floors within 15 Hudson Yards, including the pool area on the 50th Floor of 15 Hudson Yards.

69. Additionally, upon information and belief and at all times relevant herein, the lobby of 553 West 30th Street is smaller in comparison to the lobby of 15 Hudson Yards, and at one point was sealed off from 15 Hudson Yards and has its own separate mailboxes and elevators from 15 Hudson Yards.

70. Upon information and belief, the elevators within 553 West 30th Street only allow tenants to travel to floors 16-23, which is limited to lottery recipient floors, and do not have access to floors with market-rate units at 15 Hudson Yards.



71. Upon information and belief, the units within 553 West 30th Street are affordable housing units, and do not have a washer and dryer within the unit, as compared to the market-rate units at 15 Hudson Yards. However, tenants of 553 West 30th do have access to a laundry room on the 16th Floor because they do not have in-unit washer and dryers.

72. Such accommodations are necessary to afford Plaintiffs as prospective low-income tenants an equal opportunity to use and enjoy the dwelling and its amenities.

73. Upon realizing the discriminatory segregation and glaring "financial apartheid" among these two differing addresses within the 15 Hudson Yards premises, the Plaintiffs collectively declined the Defendants' offer of low-income units at 553 West 30th Street (a/k/a 15 Hudson Yards) in or around March 2020.

74. The Defendants RELATED and ERY SOUTH's policy for segregating and isolating the low-income tenants to specific lower floors within a different building address has discriminatory effects, and by exclusively placing the low-income tenants to specific floors within a separate and different address (553 West 30th), away from the market-rate units at 15 Hudson

---

[5] https://imgur.com/DRqKqhh

Yards, Defendants RELATED and ERY South are perpetuating racial segregation, which amounts to a form of illegal housing discrimination.

75. That the physical separation of the floors and building addresses between 553 West 30th and 15 Hudson Yards, specifically the separation of the low-income units from the market-rate units, respectively, disproportionately occupied by racial minorities, violates the Fair Housing Act, New York City and State Human Rights Laws, by impeding integration by restricting low-income housing needed by minorities exclusively to an area of a building mostly inhabited by minorities.

76. The discriminatory effects of RELATED and ERY SOUTH separating the building addresses between 553 West 30th and 15 Hudson Yards are racial segregation and impermissibly depriving their low-income tenants of 553 West 30th of the social and economic benefits of integration while also compromising the dignity of the population being segregated.

77. The actions and practices of RELATED and ERY SOUTH contributed to unlawful discrimination and housing in the United States of America, and the City and State of New York and jeopardized the welfare, health, and peace of the United States of America, and the City and State of New York.

78. Specifically, the separate building addresses, and likewise entries, rules and regulations and the prohibition of low-income tenants from utilizing the same amenities as the adjacent 15 Hudson Yards building with the market-rate units, have a disproportionately adverse impact on minorities because they significantly perpetuate segregation that many have fought hard to prevent.

79. Defendants RELATED and ERY SOUTH's discriminatory practice deprives a protected class of individuals from enjoying the benefits of integration, including the Plaintiffs.

80. Defendants RELATED and ERY South's discriminatory practice deprives the Plaintiffs, and prospective and current occupants of low-income units of the potential opportunity to socialize with people from more economically advantaged backgrounds and implies that they are undesirable neighbors.

81. Defendants RELATED and ERY South's discriminatory practice as described above endorses a practice that imputes inferiority upon the occupants of the affordable units on a symbolic and actual basis.

82. Further, facially neutral housing practices that have a disparate impact on the basis of race or color are prohibited by the Fair Housing Act, unless they are necessary to achieve a legitimate business purpose that cannot be satisfied through a less discriminatory alternative practice.

83. Defendants RELATED and ERY South's decisions to segregate the affordable units from the market-rate units into two separate building addresses and isolated to lower floors and to prevent low-income tenants from using the same amenities as the high-income tenants are unlawful under this standard. Such separation has a severe disparate impact on minorities, and any legitimate business and/or uniformity concerns can be satisfied through the less discriminatory alternative of creating the same address, entrances and shared amenities for low-income tenants and high-income tenants, including placing low-income units on the same floor as market-rate units.

84. Moreover, the disparate impact of RELATED and ERY SOUTH's facially neutral housing practice may be so evident and foreseeable that it demonstrates an unlawful intent to discriminate. That is also the case here. Because of well-known racial disparities regarding low-income tenants and high-income tenants in New York City, Defendants' building address

separation serves to isolate otherwise qualified minorities from entering certain common areas and utilizing the same address, floors and amenities as the high-income tenants. By implementing and maintaining their segregation policies, Defendants RELATED and ERY South continue to be engaged in intentional discrimination.

85. Defendants RELATED and ERY South's housing practices are consistent with a discriminatory policy of limiting the minority tenants into one specific building address and lower floors segregated away from the high-income tenants.

86. Further, Defendants have also made concerted efforts to change RELATED's image of 15 Hudson Yards and to present it as more "upscale," including through its print and online advertising, which prominently and predominately feature mostly young, white men and women. These efforts are consistent with a policy of purposefully attracting white tenants and dissuading others from applying.

87. While Defendants RELATED and ERY South provide a predominantly minority community with a form of social assistance through the 421-a program, it still deprives them of racial integration benefits, which simultaneously violates the Fair Housing Act and New York State and City Human Rights Laws.

88. Plaintiffs have been directly and substantially harmed by Defendants RELATED and ERY South's separation policy of offering units to an isolated area of lower floors with a different address. By concentrating and isolating the occupants of low-income units to a separate building address and specific lower floors, Defendants RELATED and ERY South have created a physical and social division between the occupants of the subsidized units and the occupants of the market-

rate units, which deprives a protected class of individuals from enjoying the benefits of integration, including Plaintiffs.

89. Because Defendants RELATED and ERY South's policy has a large discriminatory impact on the basis of race and is not necessary to achieve a legitimate business purpose, it is unlawfully discriminatory.

90. Defendants RELATED and ERY South's housing separations do not support its core mission and does not help sustain demand for market-rate homes.

91. Defendants RELATED and ERY South's unlawful actions described herein were, and are, intentional, willful, and malicious, and/or have been, and are, implemented with callous and reckless disregard for federally protected rights.

92. Such an exclusive, invidious environment cannot be permitted in New York City in 2021. Plaintiffs seek monetary damages for emotional distress and declaratory and injunctive relief for Defendants RELATED and ERY South's blatant violations of their rights under federal, State and City laws and an end to this discriminatory behavior.

## FIRST CLAIM OF RELIEF
## VIOLATION OF THE FAIR HOUSING ACT —
## RACE DISCRIMINATION- 42 U.S.C. §3604 AGAINST ALL DEFENDANTS

93. Plaintiffs repeat and incorporate by reference all allegations set forth above.

94. That the physical separation of the addresses of the buildings, specifically the separation of the affordable units to specific lower floors within a different building address, away and isolated from the market-rate dwellings disproportionately occupied by racial minorities,

violates the Fair Housing Act by impeding integration by restricting low-income housing needed by minorities exclusively to an area of a building mostly inhabited by minorities.

95. The discriminatory effects of RELATED and ERY SOUTH separating the addresses of the buildings between 553 West 30th and 15 Hudson Yards by low-income and market-rate tenants, respectively, are racial segregation and impermissibly depriving their low-income tenants of the social and economic benefits of integration while also compromising the dignity of the population being segregated.

96. Defendants' discriminatory customs, practices and actions deprive the Plaintiffs of their right of equal access to housing and/or otherwise make housing unavailable to Plaintiffs, both by intent and impact, in violation of the Fair Housing Act, 42 U.S.C. §§3604(a).

97. Defendants RELATED and ERY SOUTH's acts, policies, and practices have an adverse and disproportionate impact on African Americans and Hispanics in New York City as compared to similarly situated whites. This adverse and disproportionate impact is the direct result of Defendants' segregation policies of limiting the minority tenants into one specific building address and lower floors away from the high-income tenants and not allowing them to share the same amenities, and rules and regulations, with no consideration of their individual characteristics and circumstances. This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest can be satisfied by another practice – providing individualized consideration – that would have a less discriminatory effect.

98. Defendants' acts, policies, and practices have been carried out with the intention and impact of discriminating on the basis of race and color. Defendants have adopted and maintained an exclusionary policy with the intent and expectation that the policy disproportionately prevents

African Americans and Hispanics from obtaining the social and economic benefits of integration while also compromising the dignity of the population being segregated.

99. Defendants' discriminatory customs, practices and actions perpetuate segregation on the basis of race and color in violation of the Fair Housing Act, U.S.C. §§3604(a).

100.    Defendants' acts, policies, and practices constitute discrimination and violate the Fair Housing Act, as amended, 42 U.S.C. § 3604, and its implementing regulations, in that:

 a. Defendants' acts, policies, and practices have made and continue to make equal housing unavailable because of race and/or color, in violation of 42 U.S.C. § 3604(a); and

b. Defendants' acts, as described above, provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race and/or color, in violation of 42 U.S.C. § 3604(b); and

c. Defendants' notices and statements have expressed and/or continue to express a preference, limitation, and discrimination based on race and/or color, in violation of 42 U.S.C. § 3604(c).

**SECOND CLAIM OF RELIEF**
**VIOLATION OF THE FAIR HOUSING ACT —**
**RACE DISCRIMINATION- 42 U.S.C. §3605 AGAINST ALL DEFENDANTS**

101.    Plaintiffs repeat and incorporate by reference all allegations set forth above.

102.    That the physical separation of the addresses of the buildings, specifically the separation of the affordable units to specific lower floors within a different building address, away from the market-rate dwellings disproportionately occupied by racial minorities, violates the Fair

Housing Act by impeding integration by restricting low-income housing needed by minorities exclusively to an area of a building mostly inhabited by minorities.

103.    The discriminatory effects of RELATED and ERY SOUTH isolating the low-income tenants to lower floors of a different address located at 553 West 30th, away from market-rate tenants at 15 Hudson Yards, respectively, are racial segregation and impermissibly depriving their low-income tenants of the social and economic benefits of integration while also compromising the dignity of the population being segregated.

104.    Defendants' discriminatory customs, practices and actions deprive the Plaintiffs of their right of equal access to housing and/or otherwise make housing unavailable to Plaintiffs, both by intent and impact, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a).

105.    Defendants RELATED and ERY SOUTH's acts, policies, and practices have an adverse and disproportionate impact on African Americans and Hispanics in New York City as compared to similarly situated whites. This adverse and disproportionate impact is the direct result of Defendants' segregation policies of limiting the minority tenants into one specific building address and lower floors away from the high-income tenants and not allowing them to share the same amenities, and rules and regulations, with no consideration of their individual characteristics and circumstances. This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest can be satisfied by another practice – providing individualized consideration – that would have a less discriminatory effect.

106.    Defendants' acts, policies, and practices have been carried out with the intention of discriminating on the basis of race and color. Defendants has adopted and maintained an exclusionary policy with the intent and expectation that the policy disproportionately prevents

African Americans and Hispanics from obtaining the social and economic benefits of integration while also compromising the dignity of the population being segregated.

107.    Defendants' acts, policies, and practices constitute discrimination and violate the Fair Housing Act, as amended, 42 U.S.C. §3605, and its implementing regulations, in that:

a. Defendants' acts, policies, and practices have made and continue to make housing unavailable because of race and/or color, in violation of 42 U.S.C. § 3605(a); and

b. Defendants' acts, as described above, provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race and/or color, in violation of 42 U.S.C. § 3605(b); and

c. Defendants' notices and statements have expressed and/or continue to express a preference, limitation, and discrimination based on race and/or color, in violation of 42 U.S.C. § 3605(c).

### THIRD CLAIM OF RELIEF
### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW — RACIAL DISCRIMINATION – NYC ADMIN. CODE 8-107(5) AGAINST ALL DEFENDANTS

108.    Plaintiffs repeat and incorporate by reference all allegations set forth above.

109.    553 West 30th is a "housing accommodation" within the meaning of N.Y.C. Admin. Code 8-107(5).

110.    That the physical separation of the addresses of the buildings, specifically the separation of the affordable units to specific lower floors within a different building address, away and isolated from the market-rate dwellings disproportionately occupied by racial minorities,

violates the New York City Human Rights Law, by impeding integration by restricting low-income housing needed by minorities exclusively to an area of a building mostly inhabited by minorities.

111.   The discriminatory effects of RELATED and ERY SOUTH isolating the low-income tenants to lower floors of a different address located at 553 West 30th, away from market-rate tenants at 15 Hudson Yards, respectively, are racial segregation and impermissibly depriving their low-income tenants of the social and economic benefits of integration while also compromising the dignity of the population being segregated.

112.   Defendants' discriminatory customs, practices and actions deprive the Plaintiffs of their right of equal access to housing and/or otherwise make housing unavailable to Plaintiffs, both by intent and impact, in violation of the Administrative Code of City of NY § 8-107(5)(a)(2).

113.   Defendants RELATED and ERY SOUTH's acts, policies, and practices have an adverse and disproportionate impact on African Americans and Hispanics in New York City as compared to similarly situated whites. This adverse and disproportionate impact is the direct result of Defendants' segregation policies of limiting the minority tenants into one specific building address and lower floors away from the high-income tenants and not allowing them to share the same amenities, and rules and regulations, with no consideration of their individual characteristics and circumstances. This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest can be satisfied by another practice – providing individualized consideration – that would have a less discriminatory effect.

114.   Defendants' acts, policies, and practices have been carried out with the intention of discriminating on the basis of race and color. Defendants has adopted and maintained an exclusionary policy regarding the segregation of the buildings with the intent and expectation that

the policy disproportionately prevents African Americans and Hispanics from obtaining the social and economic benefits of integration while also compromising the dignity of the population being segregated.

115.    Defendants' acts, policies, and practices constitute discrimination and violate the New York City Human Rights Act, Administrative Code of City of NY § 8-107(5), in that:

> a. Defendants' acts, policies, and practices have made and continue to make equal housing unavailable because of race and/or color, in violation of Administrative Code of City of NY § 8-107(5)(a)(1); and

> b. Defendants' acts, as described above, provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race and/or color, in violation of Administrative Code of City of NY § 8-107(5)(a)(2); and

> c. Defendants' notices and statements have expressed and/or continue to express a preference, limitation, and discrimination based on race and/or color, in violation of Administrative Code of City of NY § 8-107(5)(a)(3).

**FOURTH CLAIM OF RELIEF**
**VIOLATION OF THE NEW YORK STATE EXECUTIVE LAW 296(5) —**
**RACIAL DISCRIMINATION AGAINST ALL DEFENDANTS**

116.    Plaintiffs repeat and incorporate by reference all allegations set forth above.

117.    That the physical separation of the addresses of the buildings and the separation of the affordable units to specific lower floors within a different building address, away and isolated from the market-rate dwellings disproportionately occupied by racial minorities, violates the New

York State Human Rights Law, by impeding integration by restricting low-income housing needed by minorities exclusively to an area of a building mostly inhabited by minorities.

118.    The discriminatory effects of RELATED and ERY SOUTH isolating the low-income tenants to lower floors of a different address located at 553 West 30th, away from market-rate tenants at 15 Hudson Yards, respectively, are racial segregation and impermissibly depriving their low-income tenants of the social and economic benefits of integration while also compromising the dignity of the population being segregated.

119.    Defendants' discriminatory customs, practices and actions deprive the Plaintiffs of their right of equal access to housing and/or otherwise make housing unavailable to Plaintiffs, both by intent and impact, in violation of the New York State Human Rights Act, NY Executive Code §296(5).

120.    Defendants RELATED and ERY SOUTH's acts, policies, and practices have an adverse and disproportionate impact on African Americans and Hispanics in New York City as compared to similarly situated whites. This adverse and disproportionate impact is the direct result of Defendants' segregation policies of limiting the minority tenants into one specific building address and lower floors away from the high-income tenants and not allowing them to share the same amenities, and rules and regulations, with no consideration of their individual characteristics and circumstances. This policy is not necessary to serve any substantial legitimate, nondiscriminatory interest, and any such interest can be satisfied by another practice – providing individualized consideration – that would have a less discriminatory effect.

121.    Defendants' acts, policies, and practices have been carried out with the intention of discriminating on the basis of race and color. Defendants has adopted and maintained an

exclusionary policy regarding the use of shared amenities and entrances between low-income units and high-income units with the intent and expectation that the policy disproportionately prevents African Americans and Hispanics from obtaining the social and economic benefits of integration while also compromising the dignity of the population being segregated.

122.    Defendants' acts, policies, and practices constitute discrimination and violate the New York State Human Rights Act, NY Executive Code §296(5), in that:

> a. Defendants' acts, policies, and practices have made and continue to make housing unavailable because of race and/or color, in violation of NY Executive Code § 296(5)(a)(1); and

> b. Defendants' acts, as described above, provide different terms, conditions, and privileges of rental housing, as well as different services and facilities in connection therewith, on the basis of race and/or color, in violation of NY Executive Code § 296(5)(a)(2); and

> c. Defendants notices and statements have expressed and/or continue to express a preference, limitation, and discrimination based on race and/or color, in violation of NY Executive Code § 296(5)(a)(3).

123.    The actions of Defendants, including but not limited to the actions outlined above, constituted racial discrimination and were directed at Plaintiffs because of their race in violation of the New York Executive Law 296(5).

124.    Defendants RELATED and ERY SOUTH's conduct, and its agents and employees, constitutes a pattern or practice of resistance to Plaintiffs' full enjoyment of their rights granted by the NYSHRL.

125.    Plaintiffs have been injured by the Defendants' discriminatory conduct.

126.    Plaintiffs are an aggrieved person and have suffered damages as a result of the Defendants RELATED and ERY SOUTH's conduct, and its agents and employees.

127.    The Defendants' actions herein constitute discrimination on the basis of race in violation of New York Executive Law 296(5).

128.    The Defendants' actions herein constitute discriminatory practices pursuant to NYSHRL.

129.    The actions of the Defendants were intentional, willful, and taken in disregard for the rights of the plaintiffs.

-continued on the following page-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter an Order that:

a.  Declares that the Defendants' discriminatory practices violate the Fair Housing
Act, 42 U.S.C. § 3604 and §3605, *et seq.* and New York State and City Human
Rights Laws;

b.  Enjoins the Defendants, their agents, employees, and successors, and all other
persons in the active concert or participation with them from:

    i.  Discriminating on the basis of race, including engaging in racial
discrimination, in any aspect of the rental or sale of a dwelling;

    ii.  Interfering with or threatening to take any action against any person engaged
in the exercise or enjoyment of rights granted or protected by the Fair
Housing Act and New York State and City Human Rights Laws;

    iii.  Failing or refusing to take such affirmative steps as may be necessary to
restore, as nearly as practicable, the victims of the Defendants past unlawful
practices to the position they would have been in but for the discriminatory
conduct; and

    iv.  Failing or refusing to take such affirmative steps as may be necessary to
prevent the recurrence of any discriminatory conduct in the future and to
eliminate, as nearly as practicable, the effects of the Defendants'
unlawful practices;

c.  Awards monetary damages to Plaintiffs aggrieved by the Defendants'
discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15
U.S.C. § 1691e(h), New York State Law, and New York City Laws;

d.  Awarding the Plaintiffs compensatory and punitive damages, costs,

attorney's fees and such other relief as the Court deems appropriate.

e.  Assesses civil penalties against the Defendants to vindicate the public

interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

f.  Awards such additional relief as the interests of justice may require.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: July 22, 2021
        New York, New York

Respectfully submitted,

MARK DAVID SHIRIAN P.C.

By: _____
        Mark D. Shirian, Esq.
        Shawn D. Shirian, Esq.
228 East 45th Street, Suite 1700-B
New York, New York 10017
Telephone: (212) 931-6530
Facsimile: (212) 898-0163
Email: mshirian@shirianpc.com
COUNSEL FOR PLAINTIFFS