*VIA ECF*

September 9, 2021

The Honorable Valerie Caproni
U.S. District Court for the Southern District of New York
40 Foley Square, Room 240
New York, NY 10007

Re:   *Moody, et al. v. The Related Companies, L.P., et al.*,
      Case No. 21-cv-06238-VEC

      Joint Initial Pre-Trial Conference Letter of the Parties

Dear Judge Caproni:

Pursuant to the Court's July 26, 2021 Order, the parties respectfully submit this joint letter in advance of the Initial Pretrial Conference to be held on September 17, 2021, at 11:30 am. Enclosed herewith, pursuant to Rule 1.E of the Court's Individual Practices in Civil Cases, is the parties' proposed Civil Case Management Plan and Scheduling Order.  The parties believe that a Rule 16 conference would be helpful in this case, including for purposes of discussing certain threshold case-management issues and anticipated motion practice, and have no objection to proceeding by teleconference.

## I.     Brief Description of the Case

### Plaintiffs' Allegations

Plaintiffs' Complaint asserts claims for declaratory, injunctive, and monetary relief under the Fair Housing Act, 42 U.S.C. §§ 3604 et seq., New York State Executive Law § 296(5), and New York City Administrative Code § 8-107(5) based on allegations of "racial discrimination" relating to the "mixed-use" development project located on the same footprint at 15 Hudson Yards and 553 West 30th Street in Manhattan—a project that consists of both "affordable rental units" leased to "low-income tenants" on a "subsidized" basis, and "luxury condominiums" offered for sale at market rates.  Compl. ¶¶ 1, 31, 57, 67, 88.  Plaintiffs allege that they were "prospective low-income tenants of 553 West 30th Street."  *Id.* ¶ 15.  They claim that Defendants The Related Companies, L.P. ("Related") and ERY South Residential Tower LLC ("ERY") (together, "Related" or the "Defendants")—as Plaintiffs' alleged "prospective landlords" who "owned," "maintained," "controlled," and "operated" the properties at issue here—have allegedly violated applicable anti-discrimination laws and unlawfully "segregated" the "low-income tenants" renting such subsidized rental apartments from the "market-rate tenants" residing in the for-sale "luxury condominiums" developed here, "by placing low-income units on lower floors" that are "located at a separate address," and "isolat[ing]" them to "separate amenities, and at one point, a separate entrance."  *Id.* ¶¶ 12-14, 62.

Plaintiffs allege that they "were selected from a housing lottery through 'NYC Housing Connect'"—a New York City-run program—"for low-income housing tenancy that Plaintiffs

initially thought were located at '15 Hudson Yards' but in actuality were located at 553 West 30th." *Id.* ¶ 57.  Plaintiffs alleged that they only "later became aware that the units . . . were located at 553 West 30th Street, which sits on the same grounds as 15 Hudson Yards, but in an entirely separate part of the building and with a different address." *Id.* ¶ 58.  In the course of investigating this potential housing opportunity, Plaintiffs alleged they discovered the presence of "discriminatory practices" at these properties, including the following:

- the affordable rental apartments "did not share the same playrooms or laundry rooms as the market-rate tenants of the adjacent building entrance at 15 Hudson Yards";

- the affordable rental apartments "were isolated and segregated to specific lower floors or areas, away and separate from the market-rate units";

- there are "separate elevators" servicing the affordable rental apartments and the for-sale condominium residences, and that affordable rental tenants have "limited access to certain upper floors" of the tower structure;

- "the lobby of 553 West 30th Street is smaller in comparison to the lobby of 15 Hudson Yards, and at one point was sealed off from 15 Hudson Yards and has its own separate mailboxes and elevators from 15 Hudson Yards"; and

- the affordable rental apartments "do not have a washer and dryer within the unit, as compared to the market-rate units at 15 Hudson Yards."

*Id.* ¶¶ 65-71.  Plaintiff Moody further alleges she was told that, as a tenant of this affordable rental housing, she would be "prohibited from entering the 15 Hudson Yards entrance." *Id.* ¶ 64.

Upon discovering these alleged "discriminatory practices," Plaintiffs "collectively declined the Defendants' offer of low-income units at 553 West 30th Street (a/k/a 15 Hudson Yards)." *Id.* ¶¶ 65, 73.  They now bring this action, alleging, *inter alia*, that, "[b]ecause of well-known racial disparities regarding low-income tenants and high-income tenants in New York City, Defendants' building address separation" and alleged discriminatory practices "serve[] to isolate otherwise qualified minorities from entering certain common areas and utilizing the same address, floors and amenities as the high-income tenants," and are "perpetuating racial segregation, which amounts to a form of illegal housing discrimination." *Id.* ¶¶ 74, 84.

### Defendants' Position

Defendants vehemently dispute Plaintiffs' allegations and deny that they have engaged in any violations of federal, state or local anti-discrimination laws in connection with the development or operation of this mixed-use condominium development project.  Defendants maintain that Plaintiffs' Complaint is premised on distortions of both governing law and material facts beyond dispute, and that all of Plaintiffs' claims should be dismissed on the pleadings.  Should any portion of this Complaint survive Defendants' forthcoming motion to dismiss—which Defendants expect to file imminently—Defendants are confident that no reasonable trier of fact will sustain any of Plaintiffs' claims on the merits.

As Plaintiffs acknowledge, Defendant Related is a "privately-owned real estate firm" based in New York, "with offices and major developments" around the world, that "has developed mixed-

use projects" in New York and elsewhere, including the historic Hudson Yards redevelopment project that includes the properties at issue here. Compl. ¶¶ 29-31.

The mixed-use development at issue here comprises multiple properties on the same site—one component consists of "luxury condominiums" offered for sale at market rates, and another component offers below-market subsidized affordable rental apartments subject to New York affordable-housing regulations. *Id.* ¶ 67. Contrary to Plaintiffs' allegations, these two residential components share common entrances and lobby space—although it is true that each component, unsurprisingly, has certain dedicated amenity spaces that are not shared with the other. The crux of Plaintiffs' case is that unlawful racial discrimination somehow arises because the affordable rental apartments do not have access to the same amenities as the luxury condominiums, "do not have a washer and dryer within the unit" like the luxury condominiums, and are on lower floors than the luxury condominiums. *Id.* ¶¶ 67-71.

But economic disparity is not racial discrimination, and this Complaint's "apples to oranges" comparisons do not make it so. As the Second Circuit has explained, the fair-housing laws were not intended to create liability "every time a neutral policy imposes an adverse impact on individuals who are poor," and "differential treatment of different economic groups" does not become "racial discrimination" simply because "minorities are statistically overrepresented in the poorer economic groups." *Salute v. Stratford Greens Garden Apts.*, 136 F.3d 293, 302 (2d Cir. 1998); *Boyd v. Lefrak Org.*, 509 F.2d 1110, 1113 (2d Cir. 1975).

In their forthcoming motion to dismiss, Defendants will seek dismissal of the Complaint on at least the following grounds.

*First*, although Plaintiffs purport to assert a claim for so-called "disparate treatment" discrimination, any such claim must be dismissed because Plaintiffs fail to allege that they "were treated differently from similarly situated persons or groups because of race." *30 Clinton Place Owners Inc. v. City of New Rochelle*, 2014 WL 890482, at *3 (S.D.N.Y. Feb. 27, 2014); *see also Logan v. Matveevskii*, 175 F. Supp. 3d 209, 226 (S.D.N.Y. 2016) (dismissing disparate treatment claim "where [the] factual allegations do not permit the conclusion that the complained-of conduct occurred because of discriminatory animus"). Plaintiffs do not allege here that qualified members of any racial group were excluded from obtaining housing either in the affordable rental apartments they sought or in the luxury condominiums that are offered for sale in this mixed-use development. Nor do they claim that any of the affordable rental tenants were treated differently from other affordable rental tenants—or that any of the condominium residents were treated differently from one another—based on race. And they conflate and compare fundamentally different groups, calling both "tenants," when, in reality, those who purchased condominiums are owners, not "tenant" renters. No disparate treatment is alleged here.

*Second*, the Complaint also fails to state any actionable claim for "disparate impact" discrimination. Plaintiffs' disparate impact claim—which is the central focus of their case—turns primarily on the "effects" that Defendants' alleged "facially neutral housing practice" purportedly have on certain minority groups. As noted previously, the fundamental premise of Plaintiffs' case—that the existence of wealth disparities between different racial groups should render it unlawful to engage in "economic discrimination of a kind that is practiced without regard to" protected classifications such as race—contravenes well-settled legal principles that

have repeatedly been upheld in this Circuit. *Salute*, 136 F.3d 293, 302; *accord*, *Boyd.*, 509 F.2d at 1113. Indeed, federal courts have long held that, "[a]lthough it is no doubt true that the 'neutral criterion' of price may disparately impact [minorities], because they may, on average, be poorer than whites . . . , this type of injury extends beyond the reach of the Fair Housing Act." *Williams v. 5300 Columbia Pike Corp.*, 1996 WL 690064, at *3 (4th Cir. 1996) (unpublished decision). Thus, the Supreme Court has explained that "[e]ntrepreneurs" involved in developing affordable housing "must be given latitude to consider market factors," *Texas Dep't of Hous. & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 541 (2015), and federal courts have long held that, "when the alleged injury to a claimant is solely the product of a facially neutral price (e.g., a price that does not vary depending on one's race . . . or other status protected by the [FHA]), no claim based on disparate impact can be brought . . . ." *Williams*, 1996 WL 690064, at *3. That is exactly what Plaintiffs seek to do here, and they therefore fail to state an actionable disparate-impact claim.

But Plaintiffs' disparate-impact claim also fails for independent reasons. For example, Plaintiffs' allegations fail to establish a "disproportionate impact" on a protected group, as compared to similarly-situated others, as well as a "robust" "causal connection between the facially neutral policy and the alleged discriminatory effect" of which they claim—both prerequisites for a viable disparate-impact claim. *Inclusive Cmtys.*, 576 U.S. at 542; *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003), *superseded by regulation on other grounds*.[1]

Put simply, Defendants maintain that this lawsuit is fundamentally and fatally flawed and intend to seek its immediate dismissal.

## II.     Contemplated Motions

As previously noted, Defendants intend imminently to move to dismiss this Complaint in its entirety for failure to state a claim. Defendants intend to request that this Court stay discovery pending a resolution of that motion. Should the Court decline to dismiss the entirety of this action on the pleadings, Defendants anticipate that they will file a motion for summary judgment at the conclusion of discovery.

## III.    Basis for Subject Matter Jurisdiction

This Court has original federal question jurisdiction over Plaintiffs' Fair Housing Act claims under 28 U.S.C. §§ 1331 and 1343. Plaintiffs assert that the Court has supplemental jurisdiction over Plaintiffs' NYSHRL and NYCHRL claims.

## IV.     Prospects for Settlement

The parties do not believe that there are appreciable prospects for settling this case in the near future.

---

[1] Plaintiffs also fail to plead facts sufficient to support their far-fetched claims under either Section 3604(c) of Section 3605 of the FHA. And Plaintiffs' state- and local-law claims should be dismissed as a matter of law for the same reasons that compel dismissal of their FHA claims. In the alternative to addressing the NYCHRL and NYSHRL claims on the merits, this Court should decline to exercise supplemental jurisdiction over them.

Respectfully,

By: /s/ Mark D. Shirian
Mark D. Shirian
Shawn D. Shirian

MARK DAVID SHIRIAN, P.C.
228 East 45th Street, Suite 1700-B
New York, NY 10017
Telephone: (212) 931-6530
mshirian@shirianpc.com

*Counsel for Plaintiffs Chanel Moody, Ayanda Carmichael, and Ronnie Clark*

By: /s/ Randy M. Mastro
Randy M. Mastro
Gabriel Herrmann
Akiva Shapiro
Nathan C. Strauss

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
RMastro@gibsondunn.com

*Counsel for Defendants The Related Companies, L.P., and ERY South Residential Tower LLC*