UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHANEL MOODY, AYANDA CARMICHAEL, AND RONNIE CLARK

        Plaintiffs,

vs.

THE RELATED COMPANIES, L.P., AND ERY SOUTH RESIDENTIAL TOWER LLC,

        Defendants.

Case No. 1:21-cv-6238 (VEC)

**Oral Argument Requested**

---

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000

*Attorneys for Defendants The Related Companies, L.P., and ERY South Residential Tower LLC*

Dated:  New York, New York
         December 17, 2021

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiffs Fail to Address the Fatal Defects
         in their Disparate-Treatment Claim ......................................................................... 2

    II.   Plaintiffs Fail to Address the Fatal Defects
         in their Disparate-Impact Claim............................................................................. 6

    III.  Plaintiffs' Unsupported Policy Arguments
         Fail to Bolster Plaintiffs' Claims ........................................................................... 9

    IV.  Plaintiffs' State- and Local-Law Claims
         Should Also Be Dismissed ................................................................................... 10

CONCLUSION............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*30 Clinton Place Owners Inc. v. City of New Rochelle*,
   2014 WL 890482 (S.D.N.Y. Feb. 27, 2014) .............................................................................3

*ACORN v. County of Nassau*,
   2006 U.S. Dist. LEXIS 50217 (E.D.N.Y. July 21, 2006) .........................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) .................................................................................................................8

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020) ...........................................................................................................10

*Boykin v. KeyCorp.*,
   521 F.3d 202 (2d Cir. 2008) ................................................................................................5, 8

*Crossroads Residents Organized for Stable and Secure ResiDencieS*
   *(CROSSRDS) v. MSP Crossroads Apts. LLC*,
   2016 WL 3661146 (D. Minn. July 5, 2016) ............................................................................8

*Dews v. Town of Sunnyvale*,
   109 F. Supp. 2d 526 (N.D. Tex. 2000) ................................................................................5, 6

*EEOC v. Port Auth.*,
   768 F.3d 247 (2d Cir. 2014) ....................................................................................................8

*Francis v. Kings Park Manor, Inc.*,
   992 F.2d 67 (2d Cir. 2021) ......................................................................................................5

*Francis v. Kings Park Manor, Inc.*,
   992 F.3d 67 (2d Cir. 2021) ......................................................................................................6

*Frey v. Bekins Van Lines, Inc.*,
   748 F. Supp. 2d 176 (E.D.N.Y. 2010) .....................................................................................3

*Gashi v. Grubb & Ellis Prop. Mgmt. Servs.*,
   2010 WL 2977143 (D. Conn. 2010) ........................................................................................8

*Gorokhovsky v. NYCHA*,
   552 F. App'x 100 (2d Cir. 2014) ...........................................................................................10

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir. 2000) ......................................................................................................4

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Hack v. President & Fellows of Yale Coll.*,
  237 F.3d 81 (2d Cir. 2000) ............................................................................................8

*Huntington Branch, NAACP v. Town of Huntington*,
  844 F.2d 926 (2d Cir. 1988) ..........................................................................................6

*LeBlanc-Sternberg v. Fletcher*,
  67 F.3d 412 (2d Cir. 1995) ............................................................................................4

*Mandala v. NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020) ..........................................................................................7

*Paige v. NYCHA*,
  2018 WL 3863451 (S.D.N.Y. Aug. 14, 2018) ...............................................................8

*Sanders v. Grenadier Realty, Inc.*,
  2009 WL 1270226 (S.D.N.Y. May 6, 2009), *aff'd*, 367 F. App'x 173 (2d Cir.
  2010) .............................................................................................................................4

*Simms v. First Gibraltar Bank*,
  83 F.3d 1546 (5th Cir. 1996) .........................................................................................5

*Smith v. Johnson*,
  2014 WL 5410054 (S.D.N.Y. Oct. 24, 2014) ..............................................................10

*Syeed v. Bloomberg L.P.*,
  2021 WL 4952486 (S.D.N.Y. Oct. 25, 2021) .................................................................8

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) ....................................................................................................10

*Trafficante v. Metropolitan Life Insurance Co.*,
  409 U.S. 205 (1972) ....................................................................................................10

*Tsombanidis v. W. Haven Fire Dept.*,
  352 F.3d 565 (2d Cir. 2003) ......................................................................................7, 8

*U.S. v. Yonkers Bd. of Ed.*,
  837 F.2d 1181 (2d Cir. 1987) ........................................................................................5

*United States v. City of Yonkers*,
  96 F.3d 600 (2d Cir. 1996) ............................................................................................6

*Williams v. 2000 Homes Inc.*,
  2009 WL 2252528 (E.D.N.Y. July 29, 2009) ............................................................3, 7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Williams v. Calderoni*,
    2012 WL 691832 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom.*,
    *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) ............................................................. 6

**Statutes**

N.Y. Real Prop. Tax L. § 421-a(7)(b) ............................................................................................. 6

Real Property Tax Law § 421-a ...................................................................................................... 6

**Other Authorities**

Audrey G. McFarlane, *The Properties of Integration: Mixed-Income Housing as
    Discrimination Management*, 66 UCLA L. Rev. 1140 (2019) ..................................................... 9

**PRELIMINARY STATEMENT**

Plaintiffs' opposition ("Opp.") fails to grapple with the overwhelming authority rejecting Plaintiffs' misguided notion of what constitutes "race discrimination." Rather than confront the case law against them, Plaintiffs simply choose to ignore it. Tellingly, they resort to making policy arguments, precisely because they have no cases to cite supporting their untenable position. Indeed, we are not aware of any case—and Plaintiffs cite none—where any court anywhere has ever endorsed Plaintiffs' far-fetched theory that economic disparity somehow equates to racial discrimination. Even after amending their pleading, Plaintiffs continue to cling to a straw-man argument: They accuse Defendants of discrimination simply because the subsidized affordable rental apartments in this mixed-use complex, which also includes for-sale luxury condominiums, are located on different floors and have different mailing addresses and amenities, among other things.[1] Plaintiffs baldly claim it is "well-known" that these types of "disparities" render such arrangements "discriminatory" because the "low-income" tenants denied those "posh amenities" are "predominantly" minorities. Am. Compl. ¶¶ 14, 84-87 (ECF Doc. 18). But differential treatment of individuals of different economic means does not constitute racial discrimination.

That is the law in this Circuit—and everywhere else—because the fair-housing laws do not subject developers to liability "every time a neutral policy imposes an adverse impact on individuals who are poor," and "differential treatment of different economic groups" is not rendered "racial discrimination" simply "because minorities are statistically overrepresented in the poorer economic groups." *Salute v. Stratford Greens Garden Apts.*, 136 F.3d 293, 302 (2d Cir. 1998); *Boyd v. Lefrak Org.*, 509 F.2d 1110, 1113 (2d Cir. 1975); *see Williams v. 5300 Columbia*

---

[1] Plaintiffs have now pulled back on their centerpiece factual allegation touted to the press upon filing—that renters supposedly had to enter the building through a separate entrance—because it turned out to be flat-out false. And they have dropped claims from their original pleading about allegedly discriminatory advertising and "real estate-related transactions." The rest of the Amended Complaint remains largely as before and just as fatally flawed.

1

*Pike Corp.*, 1996 WL 690064, at *3 (4th Cir. Dec. 3, 1996) ("no claim based on disparate impact can be brought" when "alleged injury" is "solely the product of a facially neutral price" that "does not vary depending on one's race"). Moreover, Plaintiffs' reliance on the fatally flawed premise that differential treatment among different economic groups somehow serves as a proxy for racial discrimination cannot be squared with hornbook discrimination pleading requirements. Plaintiffs have no viable "disparate treatment" claim because they cannot allege they were treated differently than "similarly situated" members of other racial groups, or that such treatment occurred "because of" their race. ECF Doc. 14 ("MTD Mem.") at 13-17. And they have no viable "disparate impact" claim because they fail to plead a "disproportionate" impact on members of a protected class or a robust "causal connection" tying such impact to Defendants' alleged conduct. *Id.* at 19-23.

Plaintiffs' overheated rhetoric, accusing the Defendants of "intentional discrimination" and "financial apartheid," is no substitute for sound legal reasoning—particularly when Plaintiffs concede that Defendants actually "provide a predominantly minority community with a form of social assistance." Am. Compl. ¶ 87. Nor is it a license for Plaintiffs to conflate race and economic status in an effort to conjure racial discrimination claims from the mere fact that individuals of lesser economic means cannot afford the same housing accommodations as more affluent persons. Plaintiffs do not come close to alleging any unlawful discrimination here. Therefore, their Amended Complaint must be dismissed in its entirety, with prejudice.

## ARGUMENT

I.  **Plaintiffs Fail to Address the Fatal Defects in their Disparate-Treatment Claim**

Plaintiffs' Opposition fails to address either of the settled legal principles that compel dismissal of Plaintiffs' disparate-treatment claim. Indeed, Plaintiffs do not even cite—let alone attempt to distinguish—*any* of the cases Defendants cited in support of their argument that the disparate-treatment claim must be dismissed for failure to plead (1) that Plaintiffs "'were treated

differently from similarly situated persons or groups,'" and (2) that they were subjected to any such differential treatment "'because of race.'"  MTD Mem. at 13 (quoting *30 Clinton Place Owners Inc. v. City of New Rochelle*, 2014 WL 890482, at *3 (S.D.N.Y. Feb. 27, 2014)); *see id.* at 13-16; ECF Doc. 21 ("MTD Ltr.") at 2-3.  That alone justifies dismissal of Plaintiffs' claim. *See, e.g.*, *Frey v. Bekins Van Lines, Inc.,* 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) ("Plaintiffs have not responded to this argument, and the court therefore deems the matter to be conceded.").

Nor do Plaintiffs cite *any* case that has ever held that a developer discriminates on the basis of race by providing more amenities to residents of luxury condominiums than it does to residents of affordable rental housing, or by situating such condominium and rental residences on different floors or elevator banks of a mixed-use complex, or by providing different mailing addresses or entrances to the condominium and rental components in such a complex.  As that dearth of case law confirms, Plaintiffs do not come close to stating an actionable disparate-treatment claim.

Indeed, as the Opposition concedes, Plaintiffs allege nothing more than that "*low-income tenants*" receive different housing accommodations than condominium residents in this complex, in that their apartments are located on different floors and elevator banks and they do not share access to the condominium amenity spaces.  Opp. at 17.  But there is no allegation that minority low-income tenants are treated any differently than non-minority low-income tenants, or that minority condominium residents are treated differently than non-minority condominium residents. Thus, Plaintiffs fail to allege that they or any other actual or prospective rental tenants were treated differently from any "similarly situated" members of other racial groups.  *Williams v. 2000 Homes Inc.*, 2009 WL 2252528, at *5 (E.D.N.Y. July 29, 2009) ("[T]reating individuals of different races differently constitutes disparate treatment only if those individuals are otherwise similarly situated."); *see Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (plaintiffs must be

"similarly situated in all material respects"). As parties eligible for affordable housing that is reserved exclusively for people of limited economic means, Plaintiffs are not similarly situated to others who—regardless of race—are able to afford luxury condominium residences (and ineligible for affordable housing). Put differently, Plaintiffs cannot allege that they were "qualified" to purchase the same housing as the persons to whom they compare themselves. *Sanders v. Grenadier Realty, Inc.*, 2009 WL 1270226, at *3 (S.D.N.Y. May 6, 2009), *aff'd*, 367 F. App'x 173 (2d Cir. 2010). Plaintiffs therefore fail to allege a comparison between "similarly situated" groups.

Rather than confront that fatal deficiency, Plaintiffs cite a raft of largely irrelevant cases involving challenges to discriminatory government zoning practices—the bulk of which involve post-judgment appeals that do not even address the pleading standards applicable here—and falsely claim that their only burden to "plead a prima facie case under a disparate treatment theory" is to "show that 'animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" Opp. at 13 (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)).[2] Leaving aside that there are no municipal decision-makers at issue in this case, Plaintiffs' argument puts the proverbial cart before the horse, because Plaintiffs must first identify an allegedly discriminatory *act*—in other words, an "'adverse . . . action'" taken against them, *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021), *cited in* Opp. at 10—before

---

[2] *LeBlanc-Sternberg* itself was a post-judgment decision in a case in which orthodox Jewish plaintiffs challenged the discriminatory zoning actions of a village that allegedly had been incorporated "with the purpose of excluding Orthodox Jews," where, *inter alia*, the zoning actions at issue had been applied in a "selective" manner, "focusing only on Orthodox synagogues," and "[t]here was abundant evidence . . . that [certain parties] had persistently urged incorporation of the Village expressly in order to gain control of zoning in order to keep Orthodox and Hasidic Jews from moving to the Airmont area." 67 F.3d at 421, 428. That case says nothing about whether Plaintiffs have adequately alleged discrimination based on the claim that the affordable housing they considered renting here was located on different floors and elevator banks from the luxury condominium residences they did not (and presumably could not) seek to purchase, or that they were offered different amenities.

attempting to plead or prove that such act was motivated by "animus."  Without alleging that they were treated differently from any "similarly situated" members of other racial groups, or that they were "qualified" for the housing accommodations they claim were withheld from them, Plaintiffs fail to identify any adverse action that could be challenged as allegedly motivated by animus.[3]

Moreover, Plaintiffs fail to plead any non-conclusory factual basis for inferring the existence of any racial animus here.  They purport to identify various factors relevant to inferring animus, but again the largely post-judgment decisions they cite from inapposite zoning and non-housing cases are no aid to their case, because <u>Plaintiffs allege no facts regarding any of those supposedly relevant factors</u>:  they allege (1) no "'historical background'" of discriminatory conduct, such as "'a series of official actions taken for invidious purposes,'" (2) no "'specific sequence of events'" implying that Defendants acted upon "learning" that the housing at issue might become "integrated," (3) no "'contemporary statements'" by Defendants reflecting discriminatory intent; (4) no "'departures from the normal procedural sequence'" for this sort of project; and (5) no "'substantive departures'" from past practices.  Opp. at 14-15 (citing *United States v. Yonkers Bd. of Ed.*, 837 F.2d 1181, 1221 (2d Cir. 1987);[4] *Dews*, 109 F. Supp. 2d at 533).

---

[3] Plaintiffs' reliance on *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526 (N.D. Tex. 2000)—another post-trial case involving a town with a history of discriminatory zoning actions—is misplaced for similar reasons.  *Dews* is irrelevant on its facts, and in any case it applied the Fifth Circuit's analysis from *Simms v. First Gibraltar Bank*, 83 F.3d 1546 (5th Cir. 1996), where a defendant bank refused to issue a loan commitment letter after the plaintiff "submitted a *qualified* proposal seeking [one]" (and, in any event, *Simms* found that the plaintiff there had no valid claims).  *Dews*, 109 F. Supp. 2d at 532, 570 (citing *Simms*, 83 F.3d at 1556).  Plaintiff alleges no such denial of a qualified application here.  The same is true of *Boykin v. KeyCorp.*, 521 F.3d 202, 214-15 (2d Cir. 2008), *cited in* Opp. at 16, where the plaintiff alleged that she was denied a loan despite having "satisfied all of KeyBank's credit requirements" and that applicants outside of her protected classifications "were treated more favorably."  And *Boykin* is inapposite for the additional reason that it applied the "less stringent" and "more liberal[]" standard applicable to a "pro se complaint." *Id.* at 214.

[4] The *Yonkers Board of Education* case and *United States v. City of Yonkers*, 96 F.3d 600 (2d Cir. 1996), *cited in* Opp. at 14, arise from the historic, decades-long campaign of DOJ and public-interest litigation against the City of Yonkers and various local officials and agencies to combat a long-standing regime of "*de jure* segregations in Yonkers . . . housing and education," as well as claims that various state officials "knew that de jure segregation existed and was increasing in Yonkers schools but took no steps to prevent or remedy that segregation." *Id.* at 603-04.  It is difficult to perceive what relevance that notorious campaign of pervasive, institutional

Plaintiffs fail to allege any of the factors that they claim are indicia of animus, and cannot state a disparate-treatment claim where, as here, "[o]nly untethered speculation supports an inference of racial animus." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 74 (2d Cir. 2021).[5]

In other words, Plaintiffs fail to allege that the differences in treatment they allege as between affordable rental tenants and luxury condominium residents are a product of anything other than the admitted economic disparities between those groups—or that any such treatment plausibly occurred "because of" race. MTD Mem. at 13-17; *Williams v. Calderoni*, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) ("The naked assertion by plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss."), *aff'd sub nom.*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013). That is fatal to their claim.[6]

## II. Plaintiffs Fail to Address the Fatal Defects in their Disparate-Impact Claim

Plaintiffs likewise fail to address any of the fatal defects that compel dismissal of their disparate-impact claim. They do not even acknowledge—let alone distinguish—the long-settled Circuit precedents holding that the FHA was not intended to create liability "every time a neutral

---

discrimination, perpetuated across multiple sectors of local and state government for many years, has to this case, which accuses a developer of discrimination relating to the configuration of a single mixed-use housing complex.

[5] Plaintiffs' reliance on *ACORN v. County of Nassau*, 2006 U.S. Dist. LEXIS 50217 (E.D.N.Y. July 21, 2006), also misses the mark. Unlike here, the *ACORN* plaintiffs alleged extensive facts regarding the specific factors underlying an inference of racial animus, including allegations about the defendant city "continuously . . . engaging in exclusionary zoning practices," such as rejecting development plans that included "affordable housing," adopting plans in response that "eliminated the possibility of an affordable housing development," and "excluding minorities from using its public parks," as well as "numerous incidents reported by African-Americans of being harassed by Garden City police while walking, jogging, driving, and shopping in Garden City." *Id.* at *8-*10. Moreover, just as Plaintiffs do here, the *ACORN* decision erroneously purported to rely upon *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926 (2d Cir. 1988), in analyzing a disparate-treatment claim, *see ACORN*, 2006 U.S. Dist. LEXIS 50217, at *36; Opp. at 15, even though the Second Circuit expressly held in *Huntington Branch* that its ruling involved *only* the application of "'disparate impact' . . . analysis, not 'disparate treatment' analysis." 844 F.2d at 933-34. *Huntington Branch* is inapplicable here.

[6] The 2015 amendment to Real Property Tax Law § 421-a does not change the analysis. It does not apply here and, moreover, did not "outlaw[]" anything; it altered the voluntary criteria that must be met for 421-a "benefits" to be "available" to a project, N.Y. Real Prop. Tax L. § 421-a(7)(b), which says nothing about racial animus.

6

policy imposes an adverse impact on individuals who are poor," that "[a] businessman's differential treatment of different economic groups" is not rendered "racial discrimination" simply "because minorities are statistically overrepresented in the poorer economic groups," and that, when a plaintiff's "alleged injury . . . is solely the product of a facially neutral price . . . , no claim based on disparate impact can be brought." *Salute*, 136 F.3d at 302; *Boyd*, 509 F.2d at 1113; *Williams*, 1996 WL 690064, at *3. That principle fatally undermines Plaintiffs' disparate-impact claim, which alleges that Plaintiffs have been denied "access" to housing arrangements and amenities that, "because of differences in wealth" as compared to condominium residents, Plaintiffs and other "low-income tenants" are unable to afford. Am. Compl. ¶¶ 14, 63, 102.

Once again, Plaintiffs also fail to address or even cite any of the case law from Defendants' moving papers confirming that their disparate-impact claim fails under hornbook pleading rules. MTD Mem. at 19-23. They fail to plead facts demonstrating the existence of a "disproportionate impact" on a protected group, using allegations based on "appropriate comparator groups." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209-11 (2d Cir. 2020); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575-77 (2d Cir. 2003). And they fail to allege the existence of a "causal connection" between the "alleged discriminatory effect" and Defendants' challenged policies—particularly insofar as they do not allege that Defendants' policies "actually or predictably created a shortage of housing" for members of any minority group. *Tsombanidis*, 352 F.3d at 575-77; *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 90-91 (2d Cir. 2000).[7]

---

[7] Plaintiffs repeatedly misconstrue the applicable pleading standards. They invoke the *Conley v. Gibson* "no set of facts" standard that was repudiated over a decade ago. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 562-63 (2007); *EEOC v. Port Auth.*, 768 F.3d 247, 253-59 (2d Cir. 2014). They improperly invoke a so-called "reduced" pleading burden under the *McDonnell Douglas* standard, which applies to disparate *treatment*, not disparate impact. *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008). And they wrongly claim this motion is a premature demand for "statistical evidence." Opp. at 19. It is not. Plaintiffs may "rely on anecdotal or qualitative allegations" for now, "[b]ut even these allegations must be sufficient to plausibly suggest that the challenged practice *actually* has a disparate impact." *Syeed v. Bloomberg L.P.*, 2021 WL 4952486, at *22 (S.D.N.Y. Oct. 25, 2021).

7

Moreover, Plaintiffs fail to cite any case in which a developer's decision to offer different categories of housing on different economic terms, to locate units on different floors by category, or to provide different amenities to different categories of units, was found to state a disparate-impact claim. Indeed, none of Plaintiffs' cases is at all relevant to the disparate-impact theory Plaintiffs advance. Those cases principally involved claims that a defendant made housing unavailable to families with children by imposing conditions that were likely to preclude or significantly dissuade such families from residing in the housing at issue. *See Paige v. NYCHA*, 2018 WL 3863451, at *3-*5 (S.D.N.Y. Aug. 14, 2018) (disparate impact alleged where housing authority's failure to disclose and remediate lead paint, which poses particular health risks to children, "predictably" would cause families with children to vacate or avoid renting such housing); *Gashi v. Grubb & Ellis Prop. Mgmt. Servs.*, 2010 WL 2977143, at *4 (D. Conn. July 21, 2010) (disparate impact alleged where condominium policy prohibiting more than two residents per bedroom rendered one-bedroom apartments unavailable to families with children, while such units remained available to couples without children); *Crossroads Residents Organized for Stable and Secure ResiDencieS (CROSSRDS) v. MSP Crossroads Apts. LLC*, 2016 WL 3661146, at *3, *8-*9 (D. Minn. July 5, 2016) (disparate impact alleged where, inter alia, landlord's "two-persons-per-bedroom occupancy standard," "credit score requirements," and disclosure requirement for tenant Social Security numbers, plausibly would render families with children, tenants receiving government subsidies, and minority undocumented aliens "unable to remain at the complex"). Those cases are irrelevant here, where Plaintiffs do not allege that they (or any other minority applicants) were denied an opportunity to rent the affordable rental apartments in this mixed-use development—or that they were even *able* to purchase (let alone that Defendants denied them an opportunity to purchase) the luxury condominiums also located there.

Plaintiffs also pivot in their Opposition to an unpleaded "alternative" theory of disparate impact premised on the notion that Defendants' actions somehow "ha[ve] an effect on housing by dissuading Plaintiffs from renting." Opp. at 22.  That contrived theory is belied by Plaintiffs' own allegations, which actually advance the opposite contention—that Defendants had a "policy" of "dissuading" minority candidates from applying for the luxury condominium residences in this complex.  Am. Compl. ¶ 86.  Moreover, it presumably is based on Plaintiffs' assertion that the differences in configuration and amenities between the condominium and affordable-rental components of this complex somehow have the effect of "compromising the dignity" of the affordable-rental tenants there.  *Id.* ¶ 76.  Even were that true—and it is not—it would not give rise to a disparate impact on any racial group because the same conditions exist equally for *all* affordable-rental tenants, regardless of their race.  Accepting Plaintiffs' own allegations as true for purposes of this motion, Plaintiffs' unpleaded new "alternative" theory is entirely counterfactual.

### III.   Plaintiffs' Unsupported Policy Arguments Fail to Bolster Plaintiffs' Claims

Unable to square their claims with the applicable law, Plaintiffs both begin and end their brief with lengthy quotes from an academic article expressing policy views about the social utility of "mixed-income housing schemes."  Audrey G. McFarlane, *The Properties of Integration: Mixed-Income Housing as Discrimination Management*, 66 UCLA L. Rev. 1140, 1147 (2019), *quoted in* Opp. at 2, 24.  Plaintiffs offer this article as support for both of their claims—but in truth it is irrelevant to either of them.  It does not purport to describe the contours of the fair-housing laws or the legality of any development practices.  Moreover, neither that article nor any of its author's other publications has ever been cited by any court anywhere.  Whatever policy views Plaintiffs glean from this source are not the law in this or any Circuit, and Plaintiffs cannot conjure a claim for violation of the fair-housing laws from the opinions of one academic that have never been endorsed by any court or legislature.  Interpreting the scope of legislative schemes such as

the fair-housing laws requires analysis of statutory text and, as appropriate, legislative history—not third-party policy views untethered to the intent of the legislature. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1753 (2020) (rejecting "naked policy appeals" as "the last line of defense for all failing statutory interpretation arguments" and "an invitation no court should ever take up").[8]

### IV. Plaintiffs' State- and Local-Law Claims Should Also Be Dismissed

Plaintiffs fail to cite any cases that provide any factual support for the parallel state- and local-law claims they plead. But the cases they cite actually confirm that these claims should be dismissed, because they fail on the pleadings just as Plaintiffs' FHA claims do, *see, e.g.*, *Smith v. Johnson*, 2014 WL 5410054, at *4 (S.D.N.Y. Oct. 24, 2014) (dismissing NYCHRL claim because, "despite the liberal construction accorded claims under the NYCHRL, Plaintiff must still allege enough facts to state a claim to relief under the NYCHRL that is plausible on its face"), *cited in* Opp. at 25, or, alternatively, because the Court should decline to exercise supplemental jurisdiction over them if it prefers not to reach them on the merits following dismissal of Plaintiff's FHA claims, *see Gorokhovsky v. NYCHA*, 552 F. App'x 100, 102 (2d Cir. 2014) ("declin[ing] to exercise supplemental jurisdiction" over NYCHRL employment-discrimination claim "because we conclude that there are no remaining viable federal claims"), *cited in* Opp. at 25.

### CONCLUSION

Plaintiffs' Amended Complaint should be dismissed in its entirety with prejudice.

---

[8] Plaintiffs' citations to *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205 (1972), give no credence to such misguided policy arguments. *Trafficante* was a case about standing (which Defendants do not contest here) and, moreover, involved claims that a landlord intentionally "exclu[ded ]minority persons from [an] apartment complex." *Id.* at 209-10. Plaintiffs do not allege that anyone was ever excluded from residing in the complex at issue here—indeed, Plaintiffs chose not to do so, Am. Compl. ¶ 73—and neither *Trafficante* nor any other court in the country has ever acknowledged, let alone endorsed, the undefined notion of "micro-segregation" referenced in Plaintiffs' cited article. The goal of the fair-housing laws is to unwind historical geographic segregation, in part by encouraging mixed-income communities; subjecting developers to potential liability for developing mixed-use housing—as Plaintiffs seek to do—would undermine, not promote, that goal. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 528-31, 544, 546 (2015) ("If the specter of disparate-impact litigation causes private developers to no longer construct or renovate housing units for low-income individuals, then the FHA would have undermined its own purpose as well as the free-market system.").

Dated: New York, New York
       December 17, 2021

Of counsel:

Steven Spriggs
Alexandra Perloff-Giles

Respectfully submitted,
GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Randy M. Mastro*
      Randy M. Mastro
      (rmastro@gibsondunn.com)
      Gabriel Herrmann
      (gherrmann@gibsondunn.com)
      Akiva Shapiro
      (ashapiro@gibsondunn.com)
      Nathan C. Strauss
      (nstrauss@gibsondunn.com)

200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendants The Related Companies, L.P., and ERY South Residential Tower LLC*

11