UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
CHANEL MOODY, AYANDA CARMICHAEL,   :
AND RONNIE CLARK,   :
                                  Plaintiffs,   :
          -against-   :
                                     :
THE RELATED COMPANIES, L.P., AND   :
ERY SOUTH RESIDENTIAL TOWER LLC,   :
                                       :
                              Defendants.   :
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/10/22_

21-CV-6238 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

New York incentivizes real estate developers to include affordable units in otherwise market-rate developments through the 421-a Tax Incentive program. Plaintiffs argue that laudable goal has led to discrimination that is unlawful under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, as well as under New York State and City law. Defendants have moved to dismiss Plaintiffs' Amended Complaint, arguing that their claims are about economic discrimination, and that, therefore, they have not stated a claim pursuant to the FHA. The Court agrees. For the reasons that follow, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

Plaintiffs Chanel Moody, Ayanda Carmichael, and Ronnie Clark were selected by lottery for access to affordable rental housing units in the building located at 15 Hudson Yards. That mixed-use building, which took advantage of the 421-a Program, includes some affordable rental units as well as market-rate condominiums. Am. Compl., Dkt. 18 ¶¶ 4, 12, 18–23, 52–53, 67. The building was developed and is operated by Defendants The Related Companies, L.P.

("Related") and ERY South Residential Tower LLC ("ERY"). Plaintiffs, who are Black[1] and low-income, allege that tenants of the affordable housing units at 15 Hudson Yards are: segregated from spaces used by luxury condominium owners in the same building; required to use "poor doors" to access their apartments (meaning that the affordable units have a different street address than the address used by the market-rate condominium owners); and refused access to certain amenities that luxury condominium owners are given (such as access to a swimming pool, playroom, and fitness center). *See, e.g., id.* ¶¶ 58, 61, 63–66, 68, 71.

Plaintiffs assert that after being selected via lottery for affordable housing units at 15 Hudson Yards they discovered that, in fact, their residence would be located at 553 West 30th Street, which is the address of a separate entrance to the same building. *Id.* ¶¶ 18–20, 32–34, 57. According to Plaintiffs, a Related employee told one of them that tenants of the affordable rental units are prohibited from using the 15 Hudson Yards entrance. *Id.* ¶ 64. Plaintiffs also learned, *inter alia*, that: the affordable rental apartments are on lower floors than the market-rate units; separate elevators service affordable rental apartments and luxury condominiums; the lobby with the 553 West 30th Street address is smaller than the lobby with the 15 Hudson Yards address; and the condominiums have in-unit washers and dryers but the rental units do not. *Id.* ¶¶ 65–71. After learning of these differences, each Plaintiff decided not to rent an apartment in the building. *Id.* ¶ 73.

On July 22, 2021, Plaintiffs filed this lawsuit. *See* Compl., Dkt. 1. Defendants moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Not. of Mot., Dkt. 13. Plaintiffs then filed an Amended Complaint, mooting

---

[1] Although none of the Plaintiffs alleges that he or she is Hispanic, the Amended Complaint refers to the discriminatory treatment of both Black and Hispanic New York affordable housing recipients. *See, e.g.*, Am. Compl. ¶¶ 111–12, 123–24, 135–36.

Defendants' motion. *See* Am. Compl., Dkt. 18; Order, Dkt. 20. Defendants again moved to dismiss the Amended Complaint. *See* Not. of Mot., Dkt. 22. Plaintiffs oppose the motion. *See generally* Pls. Opp., Dkt. 24.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In general, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).[2]

### II. Plaintiffs Fail to State a Claim Under the FHA

Plaintiffs assert claims for disparate treatment and disparate impact under the FHA.[3] The FHA makes it unlawful: to refuse to sell or rent, "or otherwise make unavailable or deny, a

---

[2] Oddly, Plaintiffs appear to advocate adherence to the long-overruled "conceivability" standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Pls. Opp. at 9. As discussed in text, they must meet the more exacting plausibility standard, a standard they seem to acknowledge exists but to which they do not adhere.

[3] In their original Complaint, Plaintiff also asserted claims pursuant to Sections 3604(c) and 3605 of the FHA. Compl. ¶¶ 100(c), 101–107. Those claims were abandoned in their Amended Complaint and therefore are not addressed here.

dwelling to any person because of race, color, . . . or national origin[,]" 42 U.S.C. § 3604(a); and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, . . . or national origin[,]" *id.* § 3604(b)).

As is relevant here, to state a claim for disparate treatment under the FHA, Plaintiffs "must allege they were treated differently from similarly situated persons or groups because of race, color, . . . or national origin." *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-3793, 2014 WL 890482, at *3 (S.D.N.Y. Feb. 27, 2014) (citation omitted).

To state a claim for disparate impact, which the Supreme Court has recognized as a cognizable claim under the FHA, *see Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015), Plaintiffs must "allege a causal connection between a facially neutral policy and a disproportionate and adverse impact on minorities." *New York City Env't Just. All. v. Giuliani*, 214 F.3d 65, 69 (2d Cir. 2000) (citation omitted).

Plaintiffs have failed adequately to allege either claim.

**A.  Plaintiffs Fail to State a Claim for Disparate Treatment**

A claim for disparate treatment requires factual allegations that would permit the Court plausibly to infer that Plaintiffs were treated differently from similarly situated persons because of their membership in a protected class. *Boykin v. KeyCorp*, 521 F.3d 202, 214–15 (2d Cir. 2008). Defendants argue that Plaintiffs have not alleged a similarly-situated group against which their treatment can be compared and that, therefore, their claim should be dismissed on that ground alone. Defs. Mem., Dkt. 14 at 14–15. Although Plaintiffs allege at length how renters of the affordable housing units are given different amenities than owners of the luxury condominiums, fatal to Plaintiffs' Amended Complaint is that luxury condominium owners are

4

not similarly situated to affordable housing tenants.[4] In other words, Plaintiffs' factual allegations do not make it possible to infer that the disparate treatment is related to Plaintiffs' race, color, or national origin. In this case, for example, if Plaintiffs had alleged, in a non-conclusory manner, that tenants of affordable housing units who are white are given access to amenities denied to Black and Hispanic affordable housing tenants, they would adequately allege disparate treatment. Instead, because Plaintiffs have not adequately pleaded a comparator who is similarly situated but treated better, they have not adequately pled a disparate treatment claim.

Because the Court's opinion turns on Plaintiffs' failure to allege a proper comparator group, it need not address Defendants' second argument — that the Court cannot infer discriminatory intent because Plaintiffs have not alleged that Defendants provided Plaintiffs with access to different amenities than they provided to the condominium owners because of Plaintiffs' race. Defs. Mem. at 15–16. Although the Court need not reach this issue, the Court agrees with Defendants that Plaintiffs have failed to allege any facts from which the Court can plausibly infer that the differential access to amenities about which Plaintiffs complain is the result of racial animus. For disparate treatment claims, Plaintiffs must allege — in a non-conclusory manner — that Defendants were motivated by discriminatory intent. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (citation omitted). Notwithstanding the numerous times that Plaintiffs use the word "intentionally" throughout their Amended Complaint, they allege no facts that would permit the Court to infer that a discriminatory intent

---

[4] Although the Second Circuit has not clearly defined what constitutes a similarly-situated comparator group in the housing context, common sense dictates that it is a group that is similar in all relevant characteristics other than the status of being in a protected class, so that the Court can infer that the alleged differential treatment is related to the protected characteristic. An illustrative example can be found in *Boykin*, 521 F.3d at 214–15. In that case, a Black female loan applicant alleged, *inter alia*, that she was denied a loan on the basis of her race and sex, treating loan applicants of similar financial means who were not in her protected racial and gender classes as similarly-situated comparator groups. The Second Circuit held that the plaintiff had plausibly stated a claim for disparate treatment in violation of the FHA because the differential treatment gave rise to an inference of discrimination on the basis of race and sex. *Id.* at 215–16.

motivated any of Defendants' actions.[5]  As a result, Plaintiffs' disparate treatment claim independently fails because there are no factual allegations that give rise to an inference of a motive to discriminate based on race, color, or national origin.[6]

### B. Plaintiffs Fail to State a Claim for Disparate Impact

Although Plaintiffs' claim would appear most naturally to fall into disparate impact jurisprudence, their Amended Complaint woefully fails to plead the elements required to state such a claim.

In the Second Circuit, housing discrimination disparate impact claims are subject to the *McDonnell Douglas* burden-shifting framework.[7]  To prove a disparate impact claim, a plaintiff must first prove a *prima facie* case by showing that the challenged practice causes a discriminatory effect; the defendant may then rebut that showing by proving that the challenged practice is necessary to achieve a substantial, legitimate, and nondiscriminatory interest; and if the defendant meets that burden, the plaintiff must show that the defendant's interests could be served by another practice with a less discriminatory effect.  24 C.F.R. § 100.500(c)(1)–(3).

At the pleading stage, a plaintiff must allege facts from which the Court can plausibly infer that (1) "the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration,

---

[5] Plaintiffs point to the statement from a Related employee informing one of the Plaintiffs that tenants of affordable units may not use certain amenities.  Am. Compl. ¶ 64.  That is hardly a smoking gun because it applied to all tenants of affordable units in that building, not just Black and Hispanic tenants.

[6] Plaintiffs cite numerous cases in which courts found that discriminatory intent could be inferred from other factors, such as, *inter alia*, the historical background of the decision to impose a certain policy, a specific sequence of events, and contemporary statements — none of which Plaintiffs even attempt to allege in this case.  Pls. Opp. at 13–16 (citations omitted).  Instead, Plaintiffs repeatedly argue that because tenants of affordable units are given access to less desirable amenities and units, Defendants have intentionally discriminated against them based on race.  *Id.* at 17–18.  This kind of circular reasoning does not give rise to an inference of discriminatory intent.

[7] *See, e.g.*, *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 618 (2d Cir. 2016) (holding the Supreme Court "implicitly adopted" the Department of Housing and Urban Development's burden-shifting disparate impact approach) (citing *Inclusive Cmtys. Project*, 576 U.S. at 533).

or requirement of law;" (2) "the challenged policy or practice has a disproportionately adverse effect on members of a protected class;" (3) "there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;" (4) "the alleged disparity caused by the policy or practice is significant; and" (5) "there is a direct relation between the injury asserted and the injurious conduct alleged." *Id.* § 100.500(b)(1)–(5). Plaintiffs have, at a minimum, failed adequately to plead facts to support the second and third prongs.

The starting place to allege a *prima facie* case of disparate impact housing discrimination are facts that tend to show that a facially neutral policy has a significantly adverse or disproportionate impact on persons in a protected group. *Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 574–75 (2d Cir. 2003), *superseded by regulation on other grounds as stated in Mhany Mgmt., Inc.*, 819 F.3d 581, 619 (2d Cir. 2016) (for disparate impact analysis based on a facially neutral policy, a plaintiff must show "a significantly adverse or disproportionate impact on persons of a particular type.") (internal quotation marks and citation omitted). Defendants argue that Plaintiffs are improperly attempting to rely on wealth as a proxy for a protected category in order to meet this prong. Defs. Mem. at 17–19.

Defendants are correct that the FHA does not provide protections based on economic status, even when economic status has substantial overlap with race. *See, e.g., Boyd v. Lefrak Org.,* 509 F.2d 1110, 1113 (2d Cir. 1975) ("A businessman's differential treatment of different economic groups is not necessarily racial discrimination and is not made so because minorities are statistically overrepresented in the poorer economic groups."). Because different outcomes based on wealth do not provide a basis for an FHA claim, Plaintiffs must show "prejudicial

treatment of minorities over and above that which is the inevitable result of disparity in income." *Id.* They fail to do so here.

Although Plaintiffs allege that Defendants' policies "have an adverse and disproportionate impact on African Americans and Hispanics in New York City as compared to similarly situated whites," Am. Compl. ¶¶ 111, 123, 135, that allegation is wholly conclusory. Plaintiffs have alleged no facts from which the Court can infer that Defendants' race-neutral housing policies have a disproportionate impact on any particular racial or ethnic group. They neither allege that Defendants' race-neutral policies have a disparate impact on Black and Hispanic affordable housing residents as compared with non-Black and non-Hispanic affordable housing residents, nor that the pool of affordable housing residents is so overwhelmingly comprised of Black and Hispanic persons that the policies necessarily have a disproportionate impact on Black and Hispanic persons writ large.[8] In other words, Plaintiffs fail to make a comparison to another non-protected group which the Court can then rely on to assess the alleged disparate treatment.

Secondly, as Defendants point out, even if Plaintiffs had made the proper comparisons, they fail to allege a causal connection between the racially-neutral policy and the adverse impact about which they complain. Defs. Mem. at 21–23. Plaintiffs argue that Defendants' facially-neutral policies cause segregation of affordable housing. Pls. Opp. at 22–24. Their theory appears to be two-fold: Defendants' policies (a) segregate Black and Hispanic affordable housing

---

[8] As Defendants argue, even if Plaintiffs alleged the latter, their Amended Complaint would still need to show more than just a statistical disparity or it would run the same risk of improperly relying on economic discrimination as a proxy for race discrimination. Defs. Mem. at 18 (citing *Inclusive Cmtys.*, 576 U.S. at 540). At a minimum, Plaintiffs would have to assert, in a non-conclusory manner, that most public housing residents are Black and Hispanic and most luxury housing condominium owners are white. But even if they were relying on such broad demographic data (which appears nowhere in the Amended Complaint), Plaintiffs would still need to allege discriminatory treatment "over and above that which is the inevitable result of disparity in income." *Boyd*, 509 F.2d at 1113.

residents who choose to live at 15 Hudson Yards from white residents of the same building, and (b) contribute to the segregation of affordable housing for those who choose not to live at 15 Hudson Yards, by making the 15 Hudson Yards housing option unattractive enough that Black and Hispanic affordable housing applicants seek housing elsewhere, thereby leaving their racial and ethnic groups underrepresented at 15 Hudson Yards. *Id.*

As to the segregation of affordable housing recipients who choose to live at 15 Hudson Yards, Plaintiffs fail to allege adequately that the affordable units are, in fact, segregated. There are no allegations regarding the racial mix of tenants in the affordable units or owners of the market-rate units, making it impossible to infer that designing the building so that all of the affordable units are on separate floors from luxury units results in the segregation of Black and Hispanic tenants.

The notion that Defendants' facially-neutral policies disproportionately steer Black and Hispanic renters away from the property is also unsupported by any factual allegations. While these three Plaintiffs assert that they opted not to accept housing at 15 Hudson Yards, *see* Am. Compl. ¶ 73, there are no allegations that even remotely suggest that non-Black and non-Hispanic affordable housing tenants disproportionately accepted apartments in the building, nor that Black and Hispanic affordable housing tenants disproportionately rejected those apartments. Without such allegations, it is impossible to conclude that the policies at issue contributed to racial segregation in the building as a whole. While Plaintiffs urge that such information can be uncovered in discovery, Pls. Opp. at 23, and note the negative policy and social effects of demarcations such as "poor doors", *id.* at 24 (citation omitted), it is a leap to suggest that the dissuading effect on the three Plaintiffs in this case is a proxy for the wider impact of these facially-neutral policies on all persons in their protected class.

In short, Plaintiffs have failed to allege a cause of action for disparate impact housing discrimination.

### III. The Court Declines to Exercise Supplemental Jurisdiction Over State-Law Claims

Because the Court has dismissed Plaintiffs' federal claims, *see supra* Section II, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state and local law claims. *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991) ("if [all] federal claims are dismissed before trial . . ., the state claims should be dismissed as well.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996) (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED, and this case is dismissed. The Clerk of Court is respectfully directed to terminate any open motions and close the case.

**SO ORDERED.**

Date:  August 10, 2022　　　　　　　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　New York, New York　　　　　　　　　　　　　　　　　　**United States District Judge**